UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD DONALD BURLEY,

       Petitioner,

                                  Case No. 11-CV-11258

v.                               HON. AVERN COHN

JOHN PRELESNIK,

       Respondent.

_____/


**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)**
**AND**
**DENYING PETITIONER'S DISCOVERY MOTIONS (Docs. 28, 29, 30) AND MOTION**
**FOR JUDICIAL NOTICE (Doc. 38)**
**AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I.  Introduction**

      This is a habeas case under 28 U.S.C. § 2254.  Edward Donald Burley,

("Petitioner"), is a state inmate at the Ionia Correctional Facility in Ionia, Michigan, in

which he is serving a sentence of eighteen years, nine months to forty years in prison

for conspiracy to commit armed robbery, in violation of M.C.L. §§ 750.157a; 750.529.

Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is

incarcerated in violation of his constitutional rights.  Respondent, through the Attorney

General's Office, filed a response, arguing that petitioner's claims are procedurally

defaulted, non-congnizable and/or without merit.  For the reasons which follow, the

petition will be denied.  Petitioner's discovery motions and motion for judicial notice will also be denied.  Finally, the Court will decline to issue a certificate of appealability.

## II.  Procedural History

## A.  Trial Court Proceedings

On June 24, 2004, petitioner pleaded guilty to the above charge in the Genesee County Circuit Court as part of a plea agreement.  In exchange for his plea, the prosecutor agreed to dismiss two additional charges of armed robbery and safebreaking against petitioner.  The prosecutor also agreed to dismiss an habitual offender charge against petitioner.

As a further part of the plea agreement, petitioner agreed to provide truthful testimony and cooperation to the police regarding two armed robberies that had taken place in Port Huron.  The prosecutor stated on the record that the trial court agreed to consider petitioner's cooperation with the police in imposing a guideline sentence on petitioner.  Defense counsel clarified that the plea agreement called for the trial court to sentence petitioner within the sentencing guidelines range.  Defense counsel further indicated that he was going to ask the trial court to consider petitioner's cooperation with the police at sentencing by asking for a less than the maximum of the guidelines.

In response to the trial court's questioning regarding the plea agreement, petitioner indicated that he understood the terms of the plea agreement.  The trial court stated he would be accepting petitioner's plea "on the basis that your sentence would be within the sentencing guidelines." (Tr. 6/24/2004, pp. 10-12).  After advising petitioner of the rights that he would waive by pleading guilty, the trial court asked petitioner if "anybody made you any promises or do you have any expectations from

2

your plea that we haven't covered here?"  Petitioner replied: "No, sir." (*Id.,* pp. 13-14).

Petitioner made out a factual basis for the plea by acknowledging that he and his co-defendant had planned on robbing Damons Restaurant.  Petitioner admitted that he went to Damons with his co-defendant and that the two men robbed the victims by placing masks over their heads and taking a pipe and other utensils with them. Petitioner indicated that he committed the robbery to obtain money for drugs.  Petitioner stated that approximately $ 15,000.00 was split between himself, his co-defendant, his co-defendant's wife, and his girlfriend. (*Id.,* pp. 14-17).

On July 24, 2004, petitioner was sentenced to eighteen years, nine months to forty years in prison, as noted above.

### B.  Appellate Proceedings

Petitioner filed an appeal with the Michigan Court of Appeals.  In *lieu* of granting petitioner's application for leave to appeal, the court of appeals remanded petitioner's case to the circuit court for resentencing because the "sentencing judge failed to articulate the basis on which he resolved the challenges to the scoring of the sentencing guidelines, and ha[d] since retired."  *People v. Burley*, No. 264009 (Mich. Ct. August 29, 2005).  Petitioner was resentenced on February 22, 2006 to the same sentence.

Petitioner again appealed his conviction and sentence, which was affirmed. *People v. Burley*, No. 273477 (Mich. Ct. App. February 27, 2007).  The Michigan Supreme Court denied leave to appeal.  *People v. Burley,* 478 Mich. 930 (2007).

Petitioner then filed an original and two supplemental post-conviction motions for relief from judgment with the trial court, which were denied.  *People v. Burley,* No. 04-

3

13795-FC (Genesee County Cir. Ct. July 7, 2008); *People v. Burley,* No. 04-13795-FC

(Genesee County Cir. Ct. Nov. 10, 2009). The Michigan appellate courts denied

petitioner leave to appeal. *People v. Burley,* No. 296840 (Mich. Ct. App. June 24,

2010); *lv. den.* 488 Mich. 1045 (2011).

### C. Habeas Proceedings

Petitioner has now filed a petition for writ of habeas corpus, presenting fifteen

(15) claims, phrased by petitioner as follows:

> I. Petitioner is entitled to resentencing because he was denied his right of meaningful allocution.

> II. Petitioner is entitled to withdraw his guilty plea where the prosecutor recommended the court impose a sentence exceeding the statutory guidelines range in clear violation of the terms of the plea agreement.

> III. Petitioner is constitutionally entitled to the enforcement of his plea agreement.

> IV. Petitioner was sentenced based on inaccurate information and was not afforded the opportunity to refute the prosecutor's false and misleading statements at sentencing.

> V. Petitioner's due process rights were clearly violated when he was denied a meaningful appeal by court officials when they improperly filed his preliminary examination transcript in the wrong file and this error was not detected until after his state court appeals.

> VI. Petitioner did not understand the consequences of his plea to conspiracy to commit armed robbery. He did not understand the consequences of the sentencing agreement that was an intricate part of the plea agreement. He is entitled to an opportunity to withdraw his guilty plea or resentencing.

> VII. The guilty plea was illusionary as it had no value and the prosecution held it out to have more value than it actually did.

> VIII. Petitioner was deprived of exculpatory evidence by the prosecutor and/or police and the prosecutor acted in bad faith by destroying exculpatory evidence.

4

IX. Petitioner was denied a meaningful appeal due to appellate counsel's ineffectiveness.

X. Petitioner's claim of actual innocence is supported by credible, newly discovered evidence, the state's withholding of exculpatory evidence, the government's fabrication of evidence, and fraud upon the court.

XI. The court upon resentencing breached the terms of the plea agreement when it did not consider the extent of petitioner's cooperation with the police in other criminal matters.

XII. Petitioner's statutory guidelines were improperly scored for offense variable (OV) 13.

XIII. Petitioner's due process rights were violated by government officials when they failed to disclose evidence that a promise of leniency was made to one of their key witnesses in exchange for his testimony against Petitioner. Robert McAlkich was offered 58 months in prison for his fabricated testimony implicating Petitioner.

XIV. Prosecutors perpetrated a fraud upon the court when they submitted evidence that was intentionally false, willfully blind to the truth, and was in reckless disregard for the truth, and was positive averment and concealment when they were under a duty to disclose.

XV. Petitioner's due process rights were violated when state prosecutors failed to disclose impeachment evidence to the defense that their star witness had been committed to a mental health institution where Mary McAlkich testified under oath that she had never been committed to a mental health facility at the preliminary examination. The prosecutor knew or should have known that she had been institutionalized in a mental institution.

Petitioner has also filed several discovery related motions and a motion for judicial notice.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.

6

Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."  *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

7

fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

## IV. Analysis

As an initial matter, petitioner has raised multiple claims.  For judicial clarity, the Court has organized and addressed related claims together.

### A.  Claims II., III., VI., VII., and XI. - Challenges to the Plea

### 1.

Petitioner challenges the validity of his guilty plea in his second, third, sixth, seventh, and eleventh claims.  Initially, petitioner has no absolute right to withdraw his guilty plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748, 655 (E.D. Mich. 2005)(internal citations omitted).  Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court.  *Id.*

A plea of guilty must be knowingly and voluntarily made.  The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

8

Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002).

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-509 (1984).  A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.* at 509 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).  A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Hastings,* 194 F. Supp. 2d at 669.

## 2.

In his second and third claims, petitioner argues that he is entitled to withdraw his guilty plea because the prosecutor breached the terms of the plea agreement at petitioner's re-sentencing by asking the trial court to consider departing above the sentencing guidelines range.  At the beginning of the re-sentencing, the trial court indicated that the sentencing guidelines range, regardless of how Offense Variable 14 was scored, would be 135 to 225 months.  (Tr. 2/22/2006, pp. 3-4).  After hearing petitioner's lengthy allocution, the prosecutor argued that the plea agreement had not

9

called for the trial court to consider a guidelines sentence and that there were grounds for the trial court to consider departing above the guidelines range and imposing a sentence of 30 to 50 years. (*Id.,* pp. 52-56). The trial court ultimately re-sentenced petitioner to 225 months, or eighteen years, nine months, to forty years in prison. In so doing, the trial court explained that he honored the original plea agreement by not going above the sentencing guidelines. (*Id.,* pp. 61-63). [1]

A prosecutor's breach of the terms of a plea agreement does not retroactively cause the defendant's guilty plea, when it was entered, to have been unknowing or involuntary. In fact, it is precisely because a defendant's guilty plea was knowing and voluntary that the prosecutor is required to uphold its side of a plea bargain. *See Puckett v. U.S.,* 556 U.S. 129, 137-38 (2009). The appropriate remedy for a prosecutor's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. See *Santobello v. New York*, 404 U.S. 257, 263 (1971). However, the appropriate remedy for the breach of a plea agreement lies within the trial court's discretion. *See Santobello*, 404 U.S. at 263; *See also Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir.1994)(the choice between the two remedies of specific performance or plea withdrawal is not up to the defendant but, rests instead with "the sound discretion" of the trial court.). More importantly, a defendant whose plea agreement has been broken by the prosecution will not always

---

[1] Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7 (2003)(citing M.C.L. § 769.34(2)). The maximum sentence is not determined by the trial court but is set by law. *See People v. Claypool,* 470 Mich. 715, 730, n. 14 (2004)(citing M.C.L. § 769.8).

10

be able to show prejudice, so as to obtain relief, either because he obtained the benefits contemplated by plea agreement anyway, or because he likely would not have obtained those benefits in any event. *See Puckett,* 556 U.S. at 141-42.

Petitioner is not entitled to habeas relief on his second and third claims for two reasons. First, even if the prosecutor breached the plea agreement at his re-sentencing did not render his original plea involuntary. *Puckett,* 556 U.S. at 137-38. Secondly, petitioner is unable to show that he was prejudiced by the breach because the trial court re-sentenced him within the sentencing guidelines range of 135 to 225 months, thereby complying with the terms of the original plea agreement. Under the circumstances, any breach of plea agreement did not prejudice petitioner, so as to allow him to withdraw his plea. *See U.S. v. Keller,* 665 F. 3d 711, 714-15 (6th Cir. 2011); *cert. den.* 132 S.Ct. 2714 (2012)(defendant's substantial rights had not been affected by government's plain error in arguing for sentence that exceeded range previously determined according to terms of plea agreement, since court sentenced defendant only to upper limit of agreed range, his sentence was lower than that anticipated by plea agreement at time that he signed it, and his sentence did not exceed upper limit of presentence report calculation which, when adopted by court, became new agreed range).

## 4.

In his sixth claim, petitioner says that his plea was involuntary because his attorney promised him that he would only receive eleven years on the minimum sentence if he pleaded guilty and further informed petitioner that the prosecutor promised to recommend a sentence at the low end of the sentencing guidelines if

petitioner cooperated with the police.

Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1986); *Hastings v. Yukins,* 194 F. Supp. 2d at 669. Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is otherwise than it unambiguously appears on a thorough record. *Baker,* 781 F. 2d at 90. Plea agreements are to be strictly construed. *See United States v. Brummett,* 786 F. 2d 720, 723 (6th Cir. 1986). A term of a plea agreement "that is unambiguous on its face and agreed to by the defendant in open court will be enforced." *McAdoo v. Elo,* 365 F. 3d 487, 497 (6th Cir. 2004). Moreover, "[T]he United States Constitution does not require judges to explain the meaning of ...unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record." *Id.*

Here, the only agreement between the parties at the time of the guilty plea with respect to sentencing was that petitioner would be sentenced within the sentencing guidelines range. Defense counsel indicated that he was going to ask the trial court to consider petitioner's cooperation with the police at sentencing by asking the judge to "go away from the maximum of the guidelines in terms of considering that cooperation." Defense counsel further indicated that he was "not asking [the court] to commit to do that, only that you would consider it in terms of his cooperation at the time of

sentencing."  There was no agreement made by the prosecutor on the record that she was going to ask the trial court to consider a sentence at the low end of the sentencing guidelines in exchange for petitioner's cooperation with the police.  A "clear reading" of the plea agreement shows that there was no promise by the prosecutor or the trial judge that petitioner would receive a sentence of eleven years in prison or that the prosecutor would request a sentence at the low end of the sentencing guidelines if he pleaded guilty.  Finally, petitioner expressly denied that any promises other than those that had been stated on the record had induced him to plead guilty.

A state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea.  *Ramos v. Rogers*, 170 F. 3d 560, 565 (6th Cir. 1999).  Therefore, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and thorough plea colloquy.  *Id.*

Here, the trial court advised the petitioner of the maximum penalty for the crime that he was pleading guilty.  The entire terms of the plea and sentence agreement were placed on the record.  Petitioner denied that any other promises had been made to get him to plead guilty other than the terms of the plea agreement which had been placed on the record.  Petitioner would therefore not be entitled to the withdrawal of his plea based on his allegation that his attorney gave him misleading sentencing information where petitioner was given the correct information regarding the plea agreement by the judge at the time of the plea and petitioner expressly denied the existence of other representations or promises at the time of his plea. *See United*

13

*States v. Todaro*, 982 F. 2d 1025, 1029-30 (6th Cir. 1993).

**5.**

In his eleventh claim, petitioner says that both the original sentencing judge and the judge at re-sentencing breached the plea agreement by failing to consider his cooperation with the police in fashioning his sentence.

An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *Myers v. Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001). Moreover, any promises made by a judge in the course of a guilty plea colloquy operate as a promise made by the state in exchange for a defendant's waiver of rights and guilty plea. *See Spencer v. Superintendent, Great Meadow Correctional Facility,* 219 F. 3d 162, 168 (2nd Cir. 2000). However, a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement." *Myers,* 159 F. Supp. 2d at 627.

However, in this case the only agreement made by the parties at the time of sentencing was that petitioner would be sentenced within the sentencing guidelines range. Although defense counsel advised the trial judge that he would be seeking a sentence at the low end of the sentencing guidelines based on petitioner's cooperation with the police, defense counsel acknowledged that he was not committing the trial court to doing that. A "clear reading" of the plea agreement shows that there was no promise by the trial judge that he would sentence petitioner to a sentence at the low end of the sentencing guidelines based on petitioner's cooperation with the police. Petitioner has therefore failed to show that the original terms of the plea agreement were breached by either the original judge at sentencing or the successor judge at

14

resentencing. *Myers,* 159 F. Supp. 2d at 628.

**6.**

In his seventh claim, petitioner contends that the plea was illusory.  A plea

agreement is entered into involuntarily and unknowingly if the defendant is unaware

that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d

243, 250-51 (6th Cir. 2000).  Illusory representations made by the prosecutor to induce

a defendant to waive his right to trial and enter a guilty plea have been found to

constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United*

*States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

In petitioner's case, the prosecutor agreed to dismiss two criminal charges and

a supplemental information charging petitioner with being an habitual offender.  The

parties also agreed that petitioner's sentence would be within the sentencing

guidelines.  Because petitioner derived a real benefit from his plea bargain in this case,

his plea was not illusory.  He is therefore not entitled to habeas relief on his seventh

claim.

**B.  Claims VIII., XIII, XIV, and XV. - Exculpatory Evidence**

**1.**

In his eighth, thirteenth, fourteenth, and fifteenth claims, petitioner contends that

his plea was involuntary because the prosecutor allegedly withheld exculpatory

evidence from him.[2]

---

[2]Respondent contends that some of these claims are procedurally defaulted
because petitioner failed to raise these claims either on direct appeal or in his post-
conviction motions and no longer has an available state court remedy to exhaust these
claims.  Procedural default is not a jurisdictional bar to review of a habeas petition the

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *See also Giglio v. United States*, 405 U.S. 150, 154 (1972)(exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence").  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

In *Brady*, the Supreme Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him ... helps *shape a trial* that bears heavily on the defendant."  *Brady*, 373 U.S. at 87–88 (emphasis added).  Similarly, in *United States v. Agurs*, 427 U.S. 97, 103-04 (1976), the Supreme Court indicated that the rule that prohibits the use of perjured testimony, upon which the *Brady* rule was founded, is based on the idea that the use of

---

merits.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  Because the procedurally defaulted claims appear to be interrelated with the non-defaulted claims, it is more efficient to address the merits of any allegedly defaulted claims.

16

perjured testimony represents "a corruption of the truth-seeking function of the *trial process.*" (emphasis added). Finally, in *United States v. Bagley*, 473 U.S. 667, 678 (1985), the Supreme Court ruled that "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a *fair trial.*" (emphasis added).

In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court held that a guilty plea is not rendered involuntary by the prosecutor's failure to disclose exculpatory impeachment information prior to the entry of the plea. *See id.* at 628–33. The Supreme Court noted that "impeachment information is special in relation to the *fairness of a trial*, not in respect of whether a plea is *voluntary.*" *Ruiz*, 536 U.S. at 629 (emphasis original). The Supreme Court further observed that "it is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty." *Id.* at 630.

To the extent that this allegedly withheld evidence is viewed as impeachment evidence, petitioner would not be entitled to habeas relief because as mentioned above, the prosecution is not required to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. *Ruiz*, 536 U.S. at 633; *Post v. Bradshaw,* 621 F. 3d 406, 426 (6th Cir. 2010).

Moreover, even if some of this evidence could be characterized as substantive exculpatory evidence, petitioner would not be entitled to habeas relief. Although the Supreme Court did not consider in *Ruiz* whether their holding also applied to the

17

nondisclosure of exculpatory substantive evidence prior to the entry of a guilty plea, [3] the Supreme Court in *Ruiz* emphasized the *Brady* rule's connection to the truth-finding function of a trial as the rationale behind their decision, which suggested that the holding in *Ruiz* extends to exculpatory substantive evidence as well.  Significantly, at some points in their opinion the Supreme Court did not differentiate between the two types of exculpatory evidence, noting that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure.  *Ruiz*, 536 U.S. at 631.  At least one federal circuit court has suggested that *Ruiz* applies to substantive exculpatory information as well as to impeachment information.  *See Friedman v. Rehal,* 618 F.3d 142, 154 and n. 5 (2nd Cir. 2010).

## 2.

In light of the reasoning of *Ruiz*, the Supreme Court's repeated description of *Brady* as grounded in the right to a fair trial, as well as the fact that the Supreme Court has yet to require that exculpatory information be disclosed prior to the entry of a guilty plea, petitioner is not entitled to habeas relief on any of his exculpatory evidence claims.  This is true even if some of the allegedly withheld evidence was viewed as substantive exculpatory evidence.  *See Orman v. Cain,* 228 F. 3d 616, 620-21 (5th Cir.

---

[3]Justice Thomas, concurring in the judgment, saw no reason to distinguish between "affirmative defense information" and exculpatory impeachment evidence. *See Ruiz*, 536 U.S. at 633-34 (Thomas, J., concurring in the judgment).

2000); *See also Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir. 2001). This is particularly so in light of the fact that petitioner pleaded guilty to the conspiracy to commit armed robbery charge in open court. *Jones,* 27 Fed. Appx. at 701. Petitioner is therefore not entitled to habeas relief on his *Brady* claims.

### C. Claims I. , IV. and XII. - Sentencing

Petitioner's first, fourth, and twelfth claims relate to alleged errors at sentencing.

### 1.

In his first claim, petitioner contends that he was denied the right to meaningful allocution at sentencing. There is no constitutional right to allocution under the United States Constitution. *Pasquarille v. United States*, 130 F. 3d 1220, 1223 (6th Cir. 1997)(citing to *Hill v. United States*, 368 U.S. 424, 428 (1962)). Therefore, a trial court's failure to afford a defendant the right to allocution raises neither a jurisdictional or constitutional error cognizable on habeas review. *Scrivner v. Tansy*, 68 F. 3d 1234, 1240 (10th Cir. 1995); *See also Cooey v. Coyle,* 289 F. 3d 882, 912 (6th Cir. 2002)(declining to issue certificate of appealability on denial of allocution claim). Moreover, a review of the re-sentencing transcript establishes that petitioner made an extensive allocution on his behalf at sentencing. (Tr. 2/22/2006, pp. 40-51). Petitioner is not entitled to relief on his first claim.

### 2.

In his fourth claim, petitioner contends that he was sentenced on the basis of inaccurate information when the prosecutor at resentencing claimed that petitioner had threatened his co-defendant when she testified at his preliminary examination by

19

making a slicing gesture across his throat and mouthing that he was going to kill her.

A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see Townsend v. Burke*, 334 U.S. 736, 741 (1948)(stating that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct, violates due process of law). In order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false. *Collins v. Buchkoe*, 493 F. 2d 343, 345-346 (6th Cir. 1974); *Welch v. Burke*, 49 F. Supp. 2d 992, 1007 (E.D. Mich. 1999). Where a petitioner fails to demonstrate in his or her petition that the sentencing court relied upon materially false information in imposing sentence, this claim is without merit. *Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

Petitioner is not entitled to habeas relief on his claim because he has failed to show that this information was false or that the trial court relied on this information in re-sentencing him.

### 3.

In his twelfth claim, petitioner contends that Offense Variable 13 of the Michigan Sentencing Guidelines was incorrectly scored. Petitioner has no state created liberty interest in having the Michigan sentencing guidelines applied rigidly in determining his sentence. *See Thomas v. Foltz*, 654 F. Supp. at 106-107. To the extent that petitioner is claiming that his sentence violates the Michigan state sentencing guidelines, his claim is not cognizable in a habeas proceeding because it is a state law claim. *Id.*

20

Petitioner's claim that the sentencing guidelines were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. *Cook v. Stegall,* 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

### D. Claim X. - Actual Innocence

In his tenth claim, petitioner contends that he is actually innocent of the charge to which he pleaded guilty.  In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999).  Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases).  As such, petitioner is not entitled to habeas relief on this ground.

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter the Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence.  *Id.* at 554-55.  Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim", *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to

21

recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.  Petitioner would therefore not be entitled to relief for his tenth claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

### E.  Claim V. - Missing Transcripts

In petitioner's fifth claim he contends that he was denied his right to a meaningful appeal because the preliminary examination transcript was not provided as part of the lower court record for his appeal.

The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice."  *See Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002) (citing *Bransford v. Brown*, 806 F. 2d 83, 86 (6th Cir. 1986)).  Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *See Bransford,* 806 F. 2d at 86.

Here, petitioner pleaded guilty to the conspiracy to commit an armed robbery charge.  As the trial court indicated in rejecting petitioner's claim on post-conviction review, the preliminary examination trancript's significance diminished after petitioner pleaded guilty.  Other than speculation, petitioner has failed to show that the preliminary examination transcript was necessary to appeal his guilty plea and resultant sentence.  Accordingly, petitioner is not entitled to habeas relief on his fifth claim.

### F.  Claim IX. - Ineffective Assistance of Appellate Counsel

22

**1.**

In his ninth claim, petitioner alleges that he was denied the effective assistance of appellate counsel.  To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'"

23

*Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough*, 541 U.S.at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard:

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, the Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt" on a direct appeal that concluded over five years ago "is precisely what *Strickland* and AEDPA seek to prevent."  *Harrington v. Richter*, 131 S. Ct. at 789.

**2.**

24

Petitioner initally contends that his appellate counsel was ineffective for failing to obtain and review the preliminary examination transcript as part of his direct appeal. The Court has already determined, however, that petitioner has failed to show that the absence of this preliminary examination transcript prejudiced his right to a meaningful appeal.  Because petitioner has failed to establish that this preliminary examination transcript would have revealed any reversible error, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to obtain and review this transcript.  Thus, appellate counsel was not ineffective in this regard.

Petitioner next contends that his appellate counsel was ineffective for failing to move to withdraw his plea on the grounds that the agreement was illusory and/or that the terms of the agreement had been breached.  This allegation too fails in light of the Court's finding that the plea agreement was not illusory and that petitioner suffered no prejudice from the prosecutor's breach of the plea agreement.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because petitioner's plea claims lack merit, appellate counsel was not deficient in failing to raise these claims on petitioner's direct appeal.

Petitioner lastly contends that appellate counsel was ineffective in failing to investigate newly discovered evidence that petitioner claims supports his actual innocence claim.  This allegation lacks merit.  There is no evidence that petitioner told his appellate counsel that he was innocent of the crime that he had pleaded guilty to.

25

In a letter to his appellate counsel dated September 1, 2006, [4] petitioner asks appellate counsel to move to withdraw his plea because the prosecutor had breached the plea agreement by asking for a sentence above the guidelines range and because the plea agreement was illusory.  Petitioner also complained that he was denied the right to allocute at sentencing.  Nowhere in this letter did petitioner indicate that he was innocent of the charge or suggest that appellate counsel move to withdraw his plea on this basis.  More importantly, petitioner made out a factual basis for his guilt at the plea hearing.  In light of the fact that petitioner never informed his appellate counsel that he was innocent of the crime that he had been convicted of, appellate counsel was not ineffective for failing to seek evidence of petitioner's innocence or to otherwise challenge the validity of petitioner's guilty plea.  *Compare Carpenter v. Mohr,* 163 F. 3d 938, 947 (6th Cir. 1998); *rev'd on other grds sub nom Edwards v. Carpenter,* 529 U.S. 446 (2000)(appellate counsel's failure to challenge, on direct appeal, the sufficiency of evidence supporting conditional guilty plea to aggravated murder, was constitutionally deficient; reasonably knowledgeable defense attorney would have known that challenge could and should have been raised under Ohio law, given that defendant consistently proclaimed his innocence and only entered plea to avoid death penalty, and that only information presented at culpability hearing was prosecution's recitation of case, which was not evidence).  Petitioner is not entitled to habeas relief on his ninth claim.

### G.  Petitioner's Motions

---

[4]*See* Petitioner's Exhibit 4, attached to Petitioner's Motion to Amend/Supplement Habeas Petition.

**1.**

Petitioner has filed a motion for discovery, a motion to take interrogatories, and a motion for copies of all of the Rule 5 materials that have been provided to this Court. Habeas petitioners have no right to automatic discovery.  *Stanford v. Parker*, 266 F. 3d 442, 460 (6th Cir. 2001).  A district court has the discretion, under Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, to grant discovery to a petitioner in a habeas case upon a fact specific showing of good cause. *Id.*  A federal district court may permit discovery in a habeas case if the petitioner presents specific allegations which give the court reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate. *See Johnson v. Mitchell,* 585 F.3d 923, 934 (6th Cir. 2009); *See also Lott v. Coyle,* 261 F.3d 594, 602 (6th Cir. 2001).  However, Rule 6 of the Habeas Rules does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F. 3d 932, 974 (6th Cir. 2004)(internal quotation omitted).  A habeas petitioner's conclusory allegations are insufficient to warrant discovery under Rule 6. *Id.*  Instead, the petitioner must set forth specific allegations of fact. *Id.*

Given that the Court has already determined that petitioner's allegations, even if true, would not entitle him to habeas relief, petitioner is not entitled to seek discovery in support of his claims. *See Sellers v. U.S.,* 316 F. Supp. 2d 516, 523 (E.D. Mich. 2004).

**2.**

Petitioner has also filed a motion for judicial notice.  Attached to the motion are various documents, the majority of which are part of the state court record and therefore part of the Rule 5 materials.  The Court has reviewed the documents and

concludes that either the documents are already in the record, as part of the Rule 5 materials or as exhibits to other papers previously filed, or not necessary for resolution of petitioner's claims.  As such, there is no need to take judicial notice of the documents.

## V.  Conclusion

For the reasons stated above, petitioner is not entitled to habeas relief on any of his claims.  Accordingly, the petition for a writ of habeas corpus is **DENIED.** Petitioner's motions for discovery and for judicial notice are **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [5] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

SO ORDERED.


Dated:  September 7, 2012              S/Avern Cohn
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 7, 2012, by electronic and/or ordinary mail.

                                       S/Julie Owens
                                      Case Manager, (313) 234-5160

---

[5] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.